IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JASON JENNINGS MELTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No.  3:18-CV-347-TWP |
| ) | 3:10-CR-126-TWP-HBG-1 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

Before the Court is Jason Jennings Melton's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 131].[1] The United States has responded in opposition [doc. 4; crim. doc. 134]; and Petitioner has replied [docs. 9, 10]. Petitioner has also filed a supplement to his § 2255 motion [doc. 13]. Also before the Court are the government's motion to substitute attorney [doc. 2; crim. doc. 132], motion for extension of time to file response *nunc pro tunc* [doc. 5; crim. doc. 135], and Petitioner's motion for extension of time [doc. 7]. For the reasons below, the government's motion to substitute attorney [doc. 2; crim doc. 132] and motion for extension of time to file response *nunc pro tunc* [doc. 5; crim doc. 135] are **GRANTED**. Petitioner's motion for an extension of time [doc. 7] will likewise be **GRANTED**. Petitioner's § 2255 motion [doc. 1; crim. doc. 131] will be **DENIED**.

---

[1] Document numbers not otherwise specified refer to the civil docket.

I.  **BACKGROUND**

In 2010, Petitioner was charged in a single-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). [Crim. doc. 1]. After a protracted procedural history, involving numerous motions to suppress and motions in limine, Petitioner entered into a written plea agreement with the government, whereby he agreed to plead guilty to the sole count of the indictment. [Crim. doc. 113 at 1].

In the plea agreement, Petitioner admitted that he was an armed career criminal, and therefore, faced a mandatory minimum term of 15 years' imprisonment. [*Id*.]. The plea agreement noted that the factual basis for the charge stemmed from the execution of a search warrant at Petitioner's residence, during which law enforcement found a sawed-off shotgun, loaded with five rounds of ammunition, and a .380 pistol. [*Id*. at 2]. The plea agreement also stated that Petitioner was a "multi-convicted felon," noting the following prior convictions: (1) 1999 convictions in Dekalb County for burglary, theft over $1,000, and aggravated burglary; (2) a 2001 conviction in DeKalb County for aggravated burglary; (3) a 2001 conviction in DeKalb County for burglary; and (4) 2002 convictions for aggravated burglary and escape. [*Id*. at 2-3]. The plea agreement stated that "[p]ursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the defendant and the United States agree that a total sentence of imprisonment of one hundred and eighty (180) months . . . is the appropriate disposition of this case." [*Id*. at 4].

At the plea hearing, the government recited the elements of the offense, and, in reciting the punishment for the offense, noted that, "[b]ecause this defendant is an armed career criminal . . . he faces a mandatory minimum term of 15 years[.]" [Crim. doc. 139 at

8-9]. The government also recited Petitioner's criminal history, as contained in the plea agreement. [*Id*. at 9-10]. Petitioner then agreed with the government's summary of the factual basis for the charge. [*Id*. at 11]. Petitioner then pleaded guilty to being a felon in possession of a firearm and ammunition, and testified that he understood what he was pleading guilty to, and was pleading guilty because he was in fact guilty. [*Id*.]. The Court found that Petitioner was fully competent and capable of entering an informed plea of guilty, and stated that the plea would be accepted by the Court. [*Id*. at 16].

The presentence investigation report ("PSR") calculated Petitioner's adjusted offense level as 24, but noted that the offense of conviction was a violation of 18 U.S.C. § 922(g), and Petitioner had at least three prior convictions for a violent felony or serious drug offense, rendering him an armed career criminal, and resulting in an offense level of 33. [PSR ¶¶ 23-24]. The PSR subtracted three levels for acceptance of responsibility, resulting in a total offense level of 30. [*Id*. ¶¶ 25-27].

In recounting Petitioner's criminal history, the PSR identified four Armed Career Criminal Act ("ACCA") predicate offenses: (1) a January 29, 1999 conviction for aggravated burglary in DeKalb County, Tennessee; (2) an April 10, 2000 conviction for aggravated burglary in DeKalb County, Tennessee; (3) a May 9, 2000 conviction for aggravated robbery in Cannon County, Tennessee; and (4) a May 9, 2000 conviction for aggravated burglary in Cannon County, Tennessee. [*Id*. ¶¶ 31-32, 34]. According to the PSR's factual recitation, both of the May 9, 2000 convictions stemmed from the same course of conduct. [*Id*. ¶ 34]. The PSR ultimately calculated Petitioner's criminal history score as 12, resulting in a criminal history category of V. [*Id*. ¶ 38]. Based on an offense

3

level of 30 and criminal history category V, the PSR calculated a guideline range of 151 months to 188 months. [*Id*. ¶ 56]. However, the PSR noted that because the statutorily authorized minimum sentence of 15 years was greater than the minimum guideline range, the guideline range was 180 to 188 months. [*Id*.].

The government filed a notice of no objections to the PSR. [Crim. doc. 116]. The government also filed a sentencing memorandum in which it requested that the Court impose the agreed-upon sentence. [Crim. doc. 117]. Petitioner's counsel also filed a sentencing memorandum, stating that Petitioner had no additional information to add to the sentencing circumstances of the case which was not contained in the PSR. [Crim. doc. 118].

At sentencing, Petitioner stated that he had gone over the PSR with his attorney, and his attorney stated that Petitioner had no objections to the PSR. [Crim. doc. 130 at 3-4]. The probation officer then recited Petitioner's criminal history, as contained in the PSR. [*Id*. at 5]. The Court asked Petitioner whether he admitted these prior convictions and warned him that, such admission would preclude him from challenging these convictions later to attack his sentence. [*Id*.]. Petitioner affirmed the prior convictions. [*Id*. at 6]. The Court thus concluded that Petitioner should be sentenced as an armed career criminal. The Court also noted that, in accordance with Rule 11(c)(1)(C), the parties had recommended a term of imprisonment of 180 months. [*Id*.]. The Court ultimately accepted the parties' recommendation and sentenced Petitioner to 180 months' imprisonment. [*Id*. at 12]. Petitioner did not object to the sentence. [*Id*. at 16]. Judgment was entered on September 19, 2012. [Crim. doc. 120]. Petitioner did not file a direct appeal.

4

On June 20, 2014, Petitioner mailed a letter to the Court, requesting a copy of his criminal docket sheet. [Crim. doc. 127]. Petitioner stated that he was "trying to file a 2255 appeal[.]" [*Id*.]. On March 18, 2015, Petitioner sent another letter to the Court, again requesting his docket sheet, and stating that he had "been working on a 2255 direct appeal conscerning [stet] the A.C.C. within the 6th District." [Crim. doc. 128]. Finally, on September 5, 2016, Petitioner sent another letter to the Court, inquiring about the progress of his "*Johnson* appeal" which he allegedly sent to the Court on "June 20" of 2016. [Crim. Doc. 129]. Petitioner acknowledged that the Court may have a high case load of *Johnson v. United States*, 135 S. Ct. 255 (2015) related cases, but expressed his concern at having heard no response, and requested an update. [*Id*.]. However, the docket does not reflect that the Court ever received any *Johnson*-based motion prior to this letter.

On August 9, 2018, Petitioner filed the instant § 2255 motion. [Doc. 1]. In his motion, Petitioner asserts that his sentence constitutes plain error because Tennessee's aggravated burglary statute no longer constitutes a violent felony under the ACCA. [*Id*. at 1-2]. Petitioner asserts that the Sixth Circuit has held that Tennessee aggravated burglary cannot serve as an ACCA predicate offense, because it is not a violent felony under the ACCA post-*Johnson*. [*Id*. at 3-4, 7]. Petitioner thus asserts that his three prior convictions for Tennessee aggravated burglary are no longer ACCA predicates and he should not be deemed an armed career criminal. [*Id*. at 8]. Petitioner further asserts that his sentence should be reduced pursuant to 18 U.S.C. § 3582(c)(2), because the amended guideline range for his plea agreement has been lowered. [*Id*. at 9].

5

On January 15, 2015, the government filed a response, arguing that Petitioner's § 2255 motion is untimely, because it was filed nearly six years after Petitioner's conviction became final, and over three years from June 26, 2015, the date that *Johnson* was decided. [Doc. 4 at 3]. The government asserts that Petitioner has not shown that he is entitled to equitable tolling, because he has not been pursuing his rights diligently. [*Id*. at 4]. The government also asserts that Petitioner's motion is barred by the collateral attack waiver in his plea agreement. [*Id*. at 5]. Finally, the government contends that *Johnson* does not affect the validity of Petitioner's sentence, as the Supreme Court has recently held that Tennessee aggravated burglary categorically qualifies as a violent felony under the ACCA's enumerated offenses clause. [*Id*. at 6-7].

In early February, Petitioner filed a reply to the government's response. [Doc. 9]. Petitioner asserts that his § 2255 motion is timely because it was filed within one year of the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). [*Id*. at 1]. Petitioner further asserts that the government is incorrect in stating that, under current Sixth Circuit law, Tennessee aggravated burglary constitutes a violent felony under the enumerated offenses clause of the ACCA. [*Id*.]. Petitioner also appears to seek permission to file a second or successive § 2255 motion. [*Id*. at 4]. Petitioner later filed another copy of this same reply. [Doc. 10].

On March 19, 2019, Petitioner filed a supplement to his § 2255 motion, arguing that, under *Hughes v. United States*, 138 S. Ct. 1765 (2018) he is eligible for relief under 18 U.S.C. § 3582(c)(2). [Doc. 13 at 1-2]. Petitioner asserts that the sentencing range calculated with the ACCA enhancement was the basis for the sentence imposed, and that

6

range has since been lowered by the Sentencing Commission, and therefore, § 3582(c)(2) is applicable. [*Id*. at 2].

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

**Pending Motions:**

Prior to the filing of its response, the government filed a motion to substitute attorneys. [Doc. 2]. The government requests that Assistant United States Attorney Debra

8

A. Breneman be substituted for Attorney Kelly A. Norris, representing the United States. [*Id*.]. The Court will **GRANT** the motion to substitute attorney [doc. 2].

Additionally, at the same time that it filed its response, on January 15, 2019, the government filed a motion for an extension of 120 days, *nunc pro tunc*, to file its response to Petitioner's § 2255 motion. [Doc. 5]. The government noted that the case had transferred between attorneys in the United States Attorney's office, and the currently assigned attorney had overlooked the response deadline due to the volume of cases she was handling. [*Id*. at 1]. On January 29, 2019, Petitioner filed a motion for a 30-day extension of time to reply to the government's response to his § 2255 motion. [Doc. 7]. Petitioner stated that he was in the process of being transferred between institutions, and as such, could not properly prepare a reply. Additionally, Petitioner stated that he intended to petition the Court to dismiss the government's response and motion for extension *nunc pro tunc* as time-barred. [*Id*.]. The Court will **GRANT** both parties' motions for extension of time [docs. 5, 7], to the extent that the Court has considered both the government's out-of-time response and the Petitioner's out-of-time reply.

### (a) Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), motions pursuant to § 2255 are subject to a one-year statute of limitations, running from one of four dates. 28 U.S.C. § 2255(f)(1)-(4). Usually, the date on which the judgment of conviction becomes final is the relevant date. 28 U.S.C. § 2255(f)(1). However, a new statute of limitations is triggered for claims based on a right which "was initially recognized

9

by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

Here, judgment was issued on September 19, 2012, and Petitioner did not appeal. Thus, his judgment became final 10 days later, on September 29, 2012. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) ("an unappealed federal criminal judgment becomes final ten days after it is entered, for purposes of the § 2255 statute of limitations"). Petitioner's § 2255 motion was signed, and thus filed, on August 9, 2018 (under the mailbox rule in *Houston v. Lack*, 487 U.S. 266 (1987), *see also Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying *Houston*'s prison mailroom filing rule to § 2255 motion based on the date of signing)—nearly five years after the date on which the one-year stations of limitations under § 2255(f)(1) elapsed. Thus, under this subsection, Petitioner's § 2255 motion is untimely.

However, Petitioner raises his § 2255 under *Johnson*, and alleges that it is timely because it was filed within one year of *Dimaya*. Petitioner also alleges that he previously filed a *Johnson*-based § 2255 motion in this Court.

Under subsection three, a petition is timely so long as it is filed within one year after the Supreme Court issues an opinion newly recognizing a right and holding that it applies retroactively to cases on collateral review. 28 U.S.C. § 2255(f)(3). Here, Petitioner was sentenced under the ACCA and his claim is raised pursuant to *Johnson*, which was decided in 2015. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson* was retroactive to cases on collateral review. However, Petitioner's § 2255 motion, filed on August 9, 2018, was not within one year of the Supreme Court's decision

in *Johnson*. To the extent that Petitioner seeks to rely on *Dimaya* to establish timeliness, his argument fails. At issue in *Dimaya* was a provision of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) ("INA") which rendered deportable any alien convicted of an "aggravated felony" after entering the United States. Under that provision, an "aggravated felony" included a "crime of violence," as defined in 18 U.S.C. § 16(a) and (b). The Supreme Court in *Dimaya* held that § 16(b), as incorporated into the INA, suffered from the same flaws as the residual clause in the ACCA that was invalidated on vagueness grounds in *Johnson*. *Dimaya*, 138 S. Ct. at 1216. Here, however, Petitioner was not sentenced under the INA, and the record provides no support for his argument that *Dimaya* applies in any way to this case. As such, *Dimaya* does not operate to reset the one-year limitations period here. Accordingly, Petitioner's § 2255 motion is untimely under both § 2255(f)(1) and (3), and, because the remaining subsections are inapplicable, the instant § 2255 motion is time-barred.

However, equitable tolling "allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). The AEDPA limitations period may be subject to equitable tolling if the movant shows that: (1) extraordinary circumstances beyond his control made timely filing of a federal habeas petitioner impossible; and (2) the movant has acted diligently in pursuing his rights. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "[T]he doctrine of equitable tolling is used sparingly by federal courts," *Robertson*, 624

11

F.3d at 784, and the movant bears the burden of showing that equitable tolling is appropriate, *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

Courts in this circuit have suggested, in the 28 U.S.C. § 2254 context, that if a state post-conviction petition was lost in the state court, the filing of which is a requisite precursor to filing a federal habeas petition, a petitioner may be entitled to equitable tolling of the statute of limitations as to his federal habeas petition. *Taylor v. Lester*, No. 3:13-cv-1275, 2014 WL 993325, at *3 (M.D. Tenn. Mar. 13, 2014). However, a petitioner must still have acted diligently in preserving his rights. *Id*. at *4.

The record indicates that Petitioner alleged to have filed a *Johnson*-based § 2255 motion in 2016, within the statute of limitations. Notably, on September 5, 2016, Petitioner sent a letter of inquiry to this Court regarding this alleged § 2255 motion, stating that it had been filed on June 20, 2016, and he had not heard any news about the progress of the motion. [Crim. doc. 129]. No such § 2255 motion is reflected on the record,[2] and Petitioner did not file any further inquiry about the matter. Instead, on August 9, 2018, Petitioner filed the instant § 2255 motion. Because Petitioner did not inquire about the status of his alleged § 2255 motion for nearly two years, the Court is not convinced that Petitioner was diligently preserving his rights. Accordingly, Petitioner has not met his burden of showing that this case is the extraordinary circumstance that merits equitable tolling, and thus, Petitioner's § 2255 motion will be denied and dismissed as untimely.

---

[2] To the extent that Petitioner seeks leave to file a second or successive § 2255 motion, such leave is unnecessary as the Court never received the first § 2255 motion that Petitioner allegedly filed. Moreover, if Petitioner did need such leave, only the Court of Appeals may grant it. *See* 28 U.S.C. § 2255(h).

**(b) Merits**

Even assuming that Petitioner's § 2255 motion is not time-barred, it nonetheless fails on the merits. As background, a felon who possesses a firearm normally faces a maximum penalty of 10 years' imprisonment, 18 U.S.C. § 924(a)(2), and 3 years' supervised release, 18 U.S.C. §§ 3559(a)(3) and 3583(b)(2). However, if that felon possesses the firearm after having sustained three prior convictions "for a violent felony or serious drug offense, or both," the ACCA requires a 15-year minimum sentence, 18 U.S.C. § 924(e)(1), and increases the maximum supervised release term to 5 years, 18 U.S.C. §§ 3559(a)(1) and 3583(b)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary, arson or extortion, [or] involves the use of explosives" (the "enumerated offenses clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In *Johnson*, the Supreme Court determined that the residual clause of the ACCA is unconstitutionally vague and concluded "that imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. *Johnson* did not automatically invalidate all ACCA sentences, however, emphasizing that its holding "d[id] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.*; *see also United States v. Kemmerling*, 612 F. App'x 373, 376 (6th Cir. 2015) (explicitly finding

that *Johnson* did not affect the ACCA's use-of-force clause). Thus, under *Johnson*, an ACCA sentence only raises due process concerns, and thus is invalid, if it necessarily was based on predicate violent felonies that qualified as such only under the ACCA's residual clause.

Although the enumerated offenses clause of the ACCA lists burglary as a violent felony, not every burglary conviction under state law actually qualifies as a violent felony. *Taylor v. United States*, 495 U.S. 575, 590-92 (1990). Instead, Congress intended to encompass only those convictions arising from burglary statutes that conform to, or are narrower than, the "generic" definition of burglary. *Id*. at 598. To determine whether a prior conviction qualifies as an ACCA predicate offense under the enumerated offenses clause, court must apply the categorical approach, under which the court compares the statutory elements of the state burglary statute to the elements of "generic burglary." *Descamps v. United States*, 570 U.S. 254, 265 (2013). If the elements of the state statute "are the same as, or narrow than, those of" generic burglary, then a conviction under the state statute qualifies as a violent felony under the ACCA's enumerated offenses clause. *Id*. at 257.

Although the government asserts that Petitioner's ACCA classification was based on three prior Tennessee aggravated burglary convictions, a Tennessee aggravated robbery conviction, and a Tennessee Class D burglary conviction, the PSR only reflects that the three aggravated burglaries and one aggravated robbery were used to classify Petitioner as an armed career criminal. [PSR ¶¶ 31-32, 34]. Petitioner relies on the Sixth Circuit's holding in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) to assert that his convictions

for aggravated burglary no longer qualify as ACCA predicates. [Doc. 1 at 2-4]. The government, however, asserts that this case was overruled by the Supreme Court in *United States v. Stitt*, 139 S. Ct. 399 (2018).

Petitioner is correct that, in its *en banc Stitt* decision, the Sixth Circuit held that aggravated burglary is not a violent felony for purposes of the ACCA. 860 F.3d at 860-61. The Sixth Circuit based this decision on its conclusion that Tennessee's aggravated burglary statute did not fall within the definition of generic burglary. *Id*. at 858. Indeed, this was the law at the time when Petitioner filed his § 2255 motion. However, on appeal, the Supreme Court concluded that the language of the Tennessee statute falls within the scope of generic burglary's definition, as set forth in *Taylor*. *Stitt*, 139 S. Ct. at 406. The Court specifically held that language in a statute allowing burglary to cover entrance into vehicles designed or adapted for overnight use did not render the statute outside the generic burglary definition. *Id*. at 407. The Court thus reversed the Sixth Circuit's holding that Tennessee aggravated burglary did not qualify as a violent felony under the ACCA. *Id*. at 408.

Accordingly, the Sixth Circuit's decision in *Stitt*, although binding law at the time when Petitioner filed his § 2255 motion, is no longer valid. Because Tennessee aggravated burglary qualifies as an ACCA predicate under the enumerated offenses clause, based on the Supreme Court's decision in *Stitt*, 139 S. Ct. 399, and because Petitioner has three prior convictions for Tennessee aggravated burglary, he qualifies as an armed career criminal even absent the ACCA's residual clause, and thus, his claim for relief is meritless. Because Petitioner has three aggravated burglary convictions that count as violent felonies, the

15

Court need not address whether any of Petitioner's remaining convictions qualify as ACCA predicates. Petitioner's § 2255 motion will be denied on this alternative ground.

### (c) Relief under § 3582(c)(2)

Finally, the Court notes that Petitioner appears to seek relief under 18 U.S.C. § 3582(c)(2) for the same reasons that he seeks relief under § 2255. Petitioner relies on the Supreme Court's decision in *Hughes*, which held that a petitioner may seek a sentence reduction under § 3582(c)(2) even if he pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). 138 S. Ct. at 1776. However, § 3582(c)(2), authorizes a sentence reduction where a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered *by the Sentencing Commission*" via a retroactively applicable amendment. 18 U.S.C. § 3582(c)(2) (emphasis added). Here, the entire premise of Petitioner's argument is that his sentence is lowered based on the application of the Supreme Court's rule in *Johnson*. Even if *Johnson* lowered Petitioner's sentence, which the Court concludes it does not, Petitioner nonetheless would not be entitled to a sentence reduction under § 3582(c)(2), because the change would not stem from the Sentencing Commission amending the Sentencing Guidelines. Thus, *Hughes* has no application, and Petitioner's claim for relief under § 3582(c)(2) will be denied.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [doc. 1; crim. doc. 131] will be **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. A petitioner may appeal a final order denying a § 2255 motion only if he is issued a COA, and a COA should issue only where the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(a), (c)(1)(B), (c)(2). When a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claims. Because Petitioner has failed to make such a showing, a COA **SHALL NOT ISSUE**.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a)(3)(A). An order consistent with this opinion will be entered.

                                                 s/ Thomas W. Phillips
                                                 SENIOR UNITED STATES DISTRICT JUDGE